# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Xin Tao,

      Plaintiff

v.

Ryan Murphy, et al.,

      Defendants

Case No.: 2:25-cv-00149-JAD-MDC

**Order Denying Motion to Compel Arbitration**

[ECF No. 9]

Xin Tao owns a rental home in Las Vegas, Nevada, that he leased to Ryan Murphy for a two-year term.  When Murphy turned around and rented it out on Airbnb's short-term rental platform, the City of Las Vegas fined Tao for violating its short-term rental prohibition.  So Tao sues Murphy and Airbnb, claiming that Murphy's business use of the property happened without his knowledge or consent and that Airbnb bears responsibility for not safeguarding against such unauthorized use.

It just so happens that Tao had created his own accounts with Airbnb for purposes unrelated to Murphy's activity, and those account terms contain an arbitration provision and a delegation clause.  Airbnb now moves to compel arbitration of this dispute based on those unrelated agreements.  But this dispute lacks any causal nexus to the agreements Tao has with Airbnb, and that disconnect prevents this court from finding that an agreement to arbitrate this controversy was formed or that the agreement falls within the ambit of the Federal Arbitration Act.  So I deny the motion to compel arbitration.

**Background**

**A.    Murphy leases Tao's home and then rents it out on Airbnb's short-term-lease platform.**

Tao and Murphy entered into a long-term lease agreement beginning in November 2021 that prohibited short-term rentals of Tao's property.[1]  Tao alleges that, unbeknownst to him, Murphy listed the home for short-term rent on Airbnb's platform using Murphy's own Airbnb account.[2]  Tao claims that he only discovered this activity when he found a code-enforcement notice posted on his property stating that the City of Las Vegas intended to levy a $180,000 fine against him.[3]  He sues Murphy and Airbnb on several contract and tort theories.[4]

**B.    The terms of use for Tao's own Airbnb accounts contain an arbitration agreement with a delegation clause.**

Tao had also created his own Airbnb accounts—once in 2016 to stay as a guest at a property that someone else rented through Airbnb, and another time when Tao briefly attempted in the fall of 2021 to let this home out to Airbnb customers on a short-term basis.[5]  In order to create both accounts, Tao "agree[d] to Airbnb's Terms of Service" and certain other policies.[6]  Those terms of service include an arbitration agreement in which

> "[the user] and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or

---

[1] ECF No. 1-2 at 15.

[2] *Id.* at ¶¶ 8–13.

[3] *Id.* at ¶¶ 20–22.

[4] *See generally id.*

[5] ECF No. 9-1 at ¶¶ 9–14; ECF No. 17 at 7–8.

[6] ECF No. 9-1 at ¶¶ 5–14.

1  interpretation thereof, or any use of the Airbnb Platform, Host
2  Services, or any Content . . . will be settled by binding individual
   arbitration."[7]

3  The terms also contain a delegation clause that states that "[i]f there is a dispute about whether

4  this Arbitration Agreement can be enforced or applies to [the] Dispute, [the user] and Airbnb

5  agree that the arbitrator will decide that issue."[8]

6
7  **C.    Airbnb moves to compel arbitration under the terms of Tao's accounts and
   contends that arbitrability must be decided by an arbitrator.**

8          Airbnb moves to compel Tao to arbitrate this case.[9]  It contends that because Tao agreed

9  to the terms of service with a delegation clause, "a court must honor the parties' contractual

10 decision and refer the matter to arbitration without exception and without determining

11 arbitrability."[10]  And even if this court were to undertake the arbitrability determination on its

12 own, Airbnb argues, arbitration must be compelled because Tao's account terms cover this

13 dispute as it "relates" to Airbnb's platform.[11]  Tao responds that the clause is unconscionable and

14 that his claim does not arise out of the terms of service because "[t]he dispute in the Complaint is

15 . . . completely unrelated and irrelevant to [Tao's own] Airbnb account."[12]  At the court's

16 request, the parties provided supplemental briefing on whether a nexus between the arbitration-

17 clause-containing contract and the dispute is required for the court to compel arbitration.[13]

18

19 _____

20 [7] *Id.* at ¶¶ 15–16.

   [8] *Id.*

21 [9] ECF No. 9.

   [10] ECF No. 22 at 3.

22 [11] *Id.* at 5.

23 [12] ECF No. 17 at 2–5.

   [13] ECF No. 34.

**Discussion**

**A.    Framework of the Federal Arbitration Act**

Congress enacted the Federal Arbitration Act (FAA) in "response to hostility of American courts to the enforcement of arbitration agreements,"[14] so the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."[15]  "The FAA provides that any arbitration agreement within its scope shall be valid, irrevocable, and enforceable," and it empowers federal district courts to issue an order compelling arbitration consistent with the agreement.[16]  But the court's authority derives from the FAA.[17]  So without that statutory authorization or an alternative basis in state law, a federal court lacks the power to stay litigation and compel arbitration.[18]

The FAA does not extend this power to every case.  Section 2 of the FAA—the FAA's coverage provision[19]—defines the outer limits of the act's reach: it applies to any arbitration clause in a contract involving a commercial transaction.[20]  Other sections of the FAA exclude

---

[14] *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

[15] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

[16] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (cleaned up).

[17] *In re Van Dusen*, 654 F.3d 838, 844 (9th Cir. 2011) ("The district court may not compel arbitration pursuant to Section 4 unless the 'agreement for arbitration' is of a kind" covered by "Sections 1 and 2."); *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 15 (1st Cir. 2017), *aff'd,* 586 U.S. 105 (2019) ("When the only basis for seeking arbitration in federal court is the FAA, the district court can grant the requested relief only if it has authority to act under the FAA.").

[18] *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1141 (9th Cir. 2001) ("Since the FAA is inapplicable to this case, the district court lacked the substantive legal authority to compel arbitration."); *Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335, 1342 (11th Cir. 2024) ("In the absence of the statutory authority found in the FAA, the district court would lack the power to stay the litigation in its own court and compel arbitration.").

[19] *Cir. City Stores*, 532 U.S. at 111.

[20] *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193 (9th Cir. 2024) (citing 9 U.S.C. § 2); *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019) ("[T]he Act applies only when the

certain cases from this grant of authority.[21]  Section 2 itself also imposes two limitations on its

scope.  First, the FAA does not require arbitration if a generally applicable state-law contract

defense applies.[22]  Second, the FAA does not apply to controversies that do not arise out of the

contract containing the arbitration agreement.[23]  Because questions about FAA coverage go to

the court's authority to compel arbitration, they must be resolved by the court.[24]

      The FAA similarly prohibits courts from compelling arbitration if no arbitration

agreement was formed.[25]  The Supreme Court has characterized Section 2 of the act as requiring

a court to decide the issue of contract formation before it can order arbitration.[26]  And as the

---

parties' agreement to arbitrate is set forth as a 'written provision in any maritime transaction or a contract evidencing a transaction involving commerce.'").

[21] *See, e.g.*, 9 U.S.C. § 1.

[22] *See, e.g.*, *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.").

[23] 9 U.S.C. § 2; *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) ("Section 2 of the FAA requires arbitration of controversies that *arise out of* a contract containing a valid, enforceable arbitration provision." (emphasis added)); *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 119–20 (2d Cir. 2025) (holding that Section 2's arising-out-of language limits the FAA's scope to controversies that were caused by the contractual relationship).

[24] *New Prime*, 586 U.S. at 111–12 ("[A] court should decide for itself" whether the FAA applies because "to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2."); *Oliveira*, 857 F.3d at 14 ("The question of the court's authority to act under the FAA is an 'antecedent determination' for the district court to make before it can compel arbitration under the Act.").  But FAA coverage is very broad and often not at issue.  So the arbitrability inquiry is typically phrased as "whether a valid agreement to arbitrate exists and, if it does, whether the agreement encompasses the dispute at issue."  *See Chiron Corp.*, 207 F.3d at 1130.

[25] *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018) ("We cannot, of course, compel arbitration in the absence of an agreement to arbitrate; to do so would be to defeat 'the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms.'").

[26] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2) (citing Section 2 for the position that "before referring a dispute to an arbitrator, the court

Ninth Circuit has noted, Section 4 of the FAA similarly requires a court to order arbitration only if the court is satisfied that a contract was formed.[27]

In contrast, the FAA is silent as to issues of arbitrability—that is, whether an agreement (not the FAA itself) covers a particular controversy.[28]  So as long as the FAA covers the dispute,[29] the Supreme Court has endorsed using the FAA to compel even obviously inapplicable disputes to an arbitrator to decide arbitrability.[30]  It reasoned that the FAA covers such cases and nothing in the FAA forbids it.[31]

The practical effect of these principles is that deciding whether to compel a controversy to arbitration can involve three "distinct" but easily conflated inquiries:[32] FAA coverage, contract formation, and arbitrability.  FAA coverage concerns whether Section 2 of the FAA covers the dispute and empowers the court to compel arbitration.[33]  Contract formation asks

---

determines whether a valid arbitration agreement exists"); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").

[27] *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (citing 9 U.S.C. § 4) ("[P]reserving for the courts the contract-formation question comports with the requirement in section 4 of the FAA that courts enforce arbitration agreements only 'upon being satisfied that the making of the agreement for arbitration . . . is not in issue.'"); *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 175 (4th Cir. 2025) ("It would defy the plain text of the FAA" and Section 4 "to enforce an arbitration clause without first determining that the contract in which it is contained was properly formed."); *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) ("Section 4 of the FAA has made clear that it is up to courts to determine whether a contract has been formed.").

[28] *See Henry Schein*, 586 U.S at 65, 69.

[29] *New Prime*, 586 U.S. at 112.

[30] *Henry Schein*, 586 U.S at 69–70.

[31] *See id.* ("The short answer is that the Act contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text.").

[32] *In re Van Dusen*, 654 F.3d at 844.

[33] *Id.*; *New Prime*, 586 U.S. at 112.

whether the parties formed a valid contract under state law and whether any defense prevents enforcement.[34]  Both contract formation and FAA coverage are questions for the court under the FAA's text.[35]  Arbitrability refers to whether a dispute is within the scope of the arbitration agreement's terms;[36] if there is a valid delegation clause, arbitrability is a question for the arbitrator.[37]

Airbnb's effort to compel Tao to arbitrate his claims gets tripped up at the first and second inquiries: whether the parties formed a valid contract to arbitrate this dispute and whether the FAA requires this court to enforce it here.  Ninth Circuit precedent and the absurd-results canon counsel that Tao and Airbnb did not form an arbitration agreement over this wholly unrelated dispute.  Even if they did, Section 2's arising-out-of language exempts this dispute from FAA coverage.  Because neither of these issues involves arbitrability,[38] Airbnb's delegation clause is not implicated.

## B.    The absurd-results canon of contract construction prevents this court from finding that an agreement to arbitrate this dispute was formed.

Tao's first challenge to Airbnb's arbitration bid is a contract-formation one.  He argues that the agreement's terms are unconscionable because the "breadth and scope of what Airbnb is requesting" is "unreasonable[]" as "any consumer who registers an account on Airbnb would, in perpetuity, be bound by Airbnb's terms of engagement regarding any dispute at any time

---

[34] *See, e.g.*, *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020).

[35] *Caremark*, 43 F.4th at 1030; *New Prime*, 586 U.S. at 112.

[36] *Schein.*, 586 U.S. at 65.

[37] *Id.*

[38] *See, e.g., Oliveira*, 857 F.3d at 15 ("[W]e reject" the "premise . . . that the issue of [the FAA's] applicability is a question of arbitrability.").

regarding any matters that even tangentially involve Airbnb."[39]  While he somewhat inartfully frames this argument as one of unconscionability, the Ninth Circuit has used similar reasoning to conclude that parties do not form arbitration agreements under the absurd-results canon.[40]  That rule of contract construction provides that "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting," and courts "normally determine the mutual intention of the parties from the written terms of the contract alone, so long as the contract language is clear and explicit and does not lead to absurd results."[41]

In *Perez v. Discover Bank*, the Ninth Circuit applied the absurd-results canon to find that an agreement to arbitrate had not been formed between a loan applicant and a bank that had acquired the rights to a years-earlier loan agreement.[42]  Iliana Perez signed a loan agreement with Citibank that included an arbitration agreement.[43]  That agreement covered any claims "arising out of or in connection with the loan" against Citibank or its successor.[44]  It also delegated the

---

[39] ECF No. 17 at 5–6.

[40] *See Revitch*, 977 F.3d at 718–19.

[41] *Perez v. Discover Bank*, 74 F.4th 1003, 1010 (9th Cir. 2023) (quoting *Revitch*, 977 F.3d at 717) (applying California law).  Airbnb asserts that California law applies because of the agreement's choice-of-law provision, it is unclear whether Tao contests that.  But I need not answer that question because the result is the same under the law of California or Nevada.  *See Reno Club v. Young Inv. Co.*, 182 P.2d 1011, 1017 (Nev. 1947) ("A contract should not be construed so as to lead to an absurd result."); *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 673 (Nev. 2021) ("[A]n interpretation is not reasonable if it makes any contract provisions meaningless, or if it leads to an absurd result."); *Airbnb, Inc. v. Rice*, 518 P.3d 88, 94 (Nev. 2022) (Stiglich, J., dissenting) ("Airbnb's argument that the Terms of Service applies to this dispute is unreasonable and would lead to an absurd result.").

[42] *Perez*, 74 F.4th at 1006.

[43] *Id*.

[44] *Id*.

8

question of arbitrability to an arbitrator.[45]  Discover Bank then acquired the Citibank loan.[46]

Seven years later, Perez coincidentally sought a loan from Discover Bank, which the bank denied

based on her undocumented status.[47]  So Perez brought several civil-rights claims against

Discover Bank.[48]  The bank moved to compel arbitration based on the Citibank loan's arbitration

agreement, which extended to Citibank's successor.[49]

      The Ninth Circuit found that the parties did not form an agreement to arbitrate the

Discover Bank dispute.[50]  It reasoned that, when she signed the Citibank agreement, "Perez

could not reasonably have expected that she would be forced to arbitrate the unrelated claims

that Discover [Bank] discriminated against her eight years later when it denied her application

for a new, distinct loan."[51]  Because compelling arbitration of an unrelated dispute with a

separate bank based on a loan agreement signed several years earlier created an absurd result and

was outside Perez's reasonable expectations, the Ninth Circuit found that the absurd-results

canon prevented such an agreement from being enforced.[52]

      I find that *Perez* controls here.  Tao agreed to Airbnb's terms of service before leasing his

home to Murphy and for reasons wholly unrelated to this dispute.  Like Perez, Tao could not

have anticipated that creating his Airbnb accounts would bind him to arbitration for a claim

accruing later and arising from another person's conduct unrelated to his own accounts.  The

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 1007.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 1010.

[51] *Id.* (cleaned up).

[52] *Id.* at 1010–11.

absurd-results cannon precludes a finding that Tao and Airbnb formed an arbitration agreement for this dispute.

As no agreement to arbitrate this dispute was formed, the delegation clause in Airbnb's terms of service has no effect. The "court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause" and "resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability."[53] Because Tao and Airbnb didn't form an agreement to arbitrate Tao's claims arising from Murphy's unauthorized rental use of Tao's property, that arbitration agreement does not bind Tao to arbitrate these claims or require this court to delegate any question to an arbitrator.

**C.    The FAA does not authorize this court to compel arbitration here because there is no causal nexus between the arbitration-clause-containing contract and this dispute.**

Even if this court were to find that an agreement to arbitrate this dispute was formed, this court lacks the power to enforce it because the agreement falls outside the coverage of the FAA. Section 2 of the act qualifies that a controversy must "aris[e] out of" the arbitration-clause-containing contract for the FAA to empower the court to enforce the arbitration provision.[54] And "[w]hile a court's authority under the [FAA] to compel arbitration may be considerable, it isn't unconditional."[55] "[Sections] 1 and 2 [of the FAA] define the field in which Congress was

---

[53] *Caremark*, 43 F.4th at 1030.

[54] 9 U.S.C. § 2; *Davitashvili*, 131 F.4th at 119–20; *Johnson*, 57 F.4th at 681; *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1212 (11th Cir. 2021) ("The Act governs an arbitration agreement only to the extent that it compels arbitration of 'controvers[ies]' that 'aris[e] out of' the 'contract' containing the arbitration agreement.").

[55] *New Prime*, 586 U.S. at 110.

legislating,"[56] and the court thus lacks authority under Section 3 and 4 to compel to arbitration

disputes that fall outside Section 1 and 2.[57]

### 1. For the FAA to apply and empower the court to compel arbitration, the dispute must be causally related to the contract that contains the arbitration agreement.

Based on the language of Section 2 of the FAA, at least one judge in the Ninth Circuit

has theorized that "when the dispute is wholly unrelated to the contract . . . federal courts have

no power to compel arbitration."[58]  Judges in other circuits have also adopted that view,[59] and

their recent opinions have shone a spotlight on Section 2's arising-out-of requirement and its

limitations on the FAA's reach.

In *Davitashvili v. Grubhub, Inc.*, for example, the Second Circuit considered whether

app-based food-delivery companies could compel restaurant customers to arbitrate their class-

action antitrust claims that Grubhub, Uber Eats, and Postmates "fixed restaurant meal prices by

entering into [no-price competition clauses] in which the restaurants agreed not to charge lower

---

[56] *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 201 (1956).

[57] *New Prime*, 586 U.S. at 110–12; *In re Van Dusen*, 654 F.3d at 844; *Revitch*, 977 F.3d at 723–24 (O'Scannlain, J., concurring) (citing David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 678–83 (2020)).

[58] *Revitch*, 977 F.3d at 723–24 (9th Cir. 2020) (O'Scannlain, J., concurring) (citing David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 678–83 (2020)).

[59] *Davitashvili*, 131 F.4th at 119–20 (holding that "Grubhub's arbitration clause does not apply to Plaintiffs' antitrust claims against Grubhub because Plaintiffs' antitrust claims do not arise out of the Terms of Use"); *id.* at 121 (Pérez, J., concurring) ("[T]he panel agrees unanimously on the principle that Section 2 of the [FAA] applies only to contracting parties' agreements to arbitrate claims 'arising out of such contract or transaction' . . . one consequence of that principle is that the FAA does not countenance motions to compel arbitration of claims that lack a requisite 'nexus' to the contract containing the arbitration clause."); *Calderon*, 5 F.4th at 1212–14.  The Ninth Circuit has made similar suggestions.  *See Johnson*, 57 F.4th at 681 ("Section 2 of the FAA requires arbitration of controversies that *arise out of* a contract containing a valid, enforceable arbitration provision." (emphasis added)); *see also Revitch*, 977 F.3d at 723–24 (O'Scannlain, J., concurring) (citing David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 678–83 (2020)); *Perez*, 74 F.4th at 1011.

prices off-platform," allegedly causing the restaurants' non-app-ordering customers "to pay artificially high prices" for their meals.[60]  The platforms moved to compel arbitration, arguing that the plaintiffs had accounts with them, and the terms of use for those accounts contained broad arbitration provisions.[61]  The district court denied the motion, holding *inter alia* that the FAA did not compel arbitration of these antitrust claims because they were "completely unrelated to" the class plaintiffs' "use of defendants' platforms" and "[t]he fact that [they] at some time used some of the defendants' platforms is purely coincidental. . . ."[62]  The Second Circuit affirmed as to Grubhub, reasoning that "[p]laintiffs who never used Grubhub are just as much class members as those who have."[63]  A *Davitashvili* concurrence succinctly summarizes this principled result this way:

> The Court appropriately rejects what amounts to an attempt by Grubhub to funnel every conceivable claim against it into arbitration, no matter its content.  The principle that controls this case is recognized by all three panel members: "**The phrase 'arising out of' in Section 2 of the FAA establishes a nexus limitation on which disputes are subject to the FAA," beyond which the FAA "will not apply to any attempts to send that dispute to arbitration.**"[64]

---

[60] *Davitashvili*, 131 F.4th 114.

[61] *Id.*

[62] *Davitashvili v. Grubhub Inc.*, 2023 WL 2537777, at *10 (S.D.N.Y. Mar. 16, 2023), *aff'd in part, rev'd in part and remanded*, 131 F.4th 109 (2d Cir. 2025).

[63] *Davitashvili*, 131 F.4th 120.  The panel reversed as to Uber and Postmates because their accounts' terms of use contained a delegation clause, and the panel found that the plaintiffs failed to challenge those clauses "with sufficient specificity" by raising their challenge only in a footnote.  *Id.* at 118–19.  So the panel held that the arbitrability of the claims against Uber and Postmates "should be sent to an arbitrator to determine . . . ."  *Id.* at 119.

[64] *Id.* at 124 (Pérez, J., concurring) (cleaned up) (emphasis added).

Courts increasingly read Section 2's arising-out-of language and any nexus limitation to require a causal relationship between the arbitration-clause-containing contract and the dispute. As one scholar noted, the drafters of the FAA would have understood "arising out of" to mean "proceeding, issuing, or springing from," all of which imply some sort of causal nexus between the contract and the dispute.[65] The Supreme Court has recently acknowledged in dicta that "the 'arising out of' language" in Section 2 "normally refers to a causal relationship,"[66] and so did the Second Circuit in *Davitashvili*.[67] The Eleventh Circuit has similarly interpreted "arising out of" to mean "the dispute in question was an immediate, foreseeable result of the performance of contractual duties."[68]

So courts have rejected Airbnb's premise that anything remotely related to it "arises out of" a plaintiff's Airbnb account's terms of service. For example, in *Peterson v. Devita*, Andrew Peterson sued Airbnb after a railing gave way, injuring Peterson at a home that his friend rented through the Airbnb platform.[69] Airbnb moved to compel arbitration because Peterson happened to have his own Airbnb account.[70] But the Illinois Appellate Court refused to compel arbitration based only on "Peterson happen[ing] to be at the property as a guest of someone who booked

---

[65] *See* David Horton, *Accidental Arbitration*, 102 Wash. U.L. Rev. 1381, 1419 (2025) (cleaned up) (analyzing dictionaries and authorities from the time of the FAA's enactment).

[66] *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 652 n.4 (2022) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021)); *Coeur D'Alene Tribe of Id. v. Hammond*, 384 F.3d 674, 683 (9th Cir. 2004) ("[O]ur precedent requires that we give great weight to dicta of the Supreme Court.").

[67] *Davitashvili*, 131 F.4th at 119–20 ("[C]ontroversies that 'arise out of' the parties' contractual relationship" are "controversies that were 'cause[d]' by the relationship.").

[68] *Calderon*, 5 F.4th at 1213.

[69] *Peterson v. Devita*, 237 N.E.3d 1010, 1013 (Ill. App. Ct. 2023).

[70] *Id.*

through Airbnb" and "fortuit[ously]" also happening to have an Airbnb account.[71]  Nothing

connected his claim to his use of Airbnb—Peterson was not a party or participant in the booking

of the property.[72]  Rather, only "the fortuity of [Peterson] having created an account" connected

him to Airbnb, which was insufficient to show that the claim arose out of Airbnb's terms of

service, and enforcement would lead to "absurd consequences."[73]

Airbnb sees it differently.  It contends that the "Ninth Circuit interprets the 'arising out of

or relating to' language as broad and far-reaching, compelling arbitration whenever a claim has

any factual nexus to the agreement" and that Tao's "allegations necessarily 'relate to' Airbnb's

terms because they challenge Airbnb's role in connection with platform use."[74]  But Airbnb

conflates *the scope* of the agreement with *the application of Section 2 of the FAA*, which limits

the court's power to enforce overbroad arbitration agreements[75] and lacks such "relate to"

language.[76]

The cases Airbnb cites to do not counsel a different result regarding the "arising out of"

language in Section 2.  The first case Airbnb cites, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

didn't deal with a controversy unrelated to the contract but whether, under the parties'

agreement's terms, an arbitrator or the court needed to decide whether a res judicata defense

applied.[77]  Airbnb's second case, *Simula, Inc. v. Autoliv, Inc.*, interpreted the language "arising in

---

[71] *Id.* at 1016–17.

[72] *Id.* at 1017–18.

[73] *See id.*

[74] ECF No. 36 at 3 (cleaned up).

[75] *See Revitch*, 977 F.3d at 723–24 (O'Scannlain, J., concurring) (citing David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 678–83 (2020)); *Davitashvili*, 131 F.4th at 119–20.

[76] *See* 9 U.S.C. § 2.

[77] *See Chiron Corp.*, 207 F.3d at 1132.

connection with" in an arbitration agreement,[78] concluding that the language reached "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."[79]  But the construction of a contract is distinct from application of the FAA—to which the canons of statutory construction apply.[80]  And the *Simula* court acknowledged that "arising in connection with" is a broader phrase than "arising out of," and that "'arising out of' . . .  seem[s] to limit the clause to disputes concerning the contract itself."[81]  So Airbnb's cases do not support the conclusion that a causal relationship is not required for Section 2 to apply to this dispute.

### 2.      There is no causal nexus between Tao's agreement with Airbnb and this dispute.

A causal nexus is absent here because the controversy Airbnb seeks to arbitrate has no connection to the terms of service that Tao agreed to when he signed up for an Airbnb account. Assuming Tao's allegations are true, Murphy still would have posted the property on Airbnb using Murphy's own account, regardless of whether Tao had his own contractual relationship with Airbnb.

The Nevada Supreme Court found a causal relationship similarly lacking in *Airbnb, Inc. v. Rice*.  Someone shot a gun into a crowd, killing Raheem Rice and injuring Bryan Lovett, who were walking to a house party at a property booked through Airbnb.[82]  When Airbnb was sued

---

[78] *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

[79] *Id.*

[80] *In re Saldana*, 122 F.4th 333, 341 (9th Cir. 2024) ("In construing a statute, we begin with the plain words of the statute, employing the familiar canons of statutory construction." (cleaned up)).

[81] *Simula*, 175 F.3d at 721.

[82] *Rice*, 518 P.3d at 89.

for wrongful death and personal injury,[83] it moved to compel arbitration because the plaintiffs happened to have Airbnb accounts through which they'd agreed to Airbnb's terms of service.[84] The plaintiffs argued that the dispute did not arise out of Airbnb's terms of service because the plaintiffs "did not book the Airbnb rental where the shooting occurred" and "the record [did] not indicate [they] ever utilized Airbnb's services at all."[85]   The en banc Nevada Supreme Court agreed that "the dispute . . . did not arise out of a contract between the parties" because "[t]he facts underlying [the] wrongful death action have no relation to [the plaintiffs'] use of Airbnb's services or platform" and "do not arise out of Airbnb's duties to [the plaintiffs] by virtue of their agreements to Airbnb's Terms of Service."[86]

The instant dispute similarly did not arise out of a contract between the plaintiff and Airbnb because the facts of this case have no relation to Tao's use of Airbnb's services or platform.  The fact that Tao has any agreement with Airbnb is purely fortuitous.[87]  So I find that Tao's agreement with Airbnb falls outside the reach of the FAA.  As a result, the FAA does not empower this court to compel arbitration of this dispute.

---

[83] *Id.*

[84] *Id.* at 89–90.

[85] *Id.*

[86] *Id.* at 91.  Despite these observations, the majority of the en banc court in *Rice* nevertheless found the agreement's delegation clause enforceable and remanded for the trial court to delegate the arbitrability question to an arbitrator.  *Id.* at 92.

[87] *See also Peterson*, 237 N.E.3d at 1017 ("A contract—and not fate—dictates arbitrability.").

**D.    Because the agreement falls outside the reach of the FAA, this court need not enforce the delegation clause.**

Airbnb insists that any questions about whether to send this case to arbitration must be decided by an arbitrator because of the delegation clause in its terms of service.[88]  In its view, a valid delegation clause "ends the inquiry" under the United States Supreme Court's decision in *Henry Schein, Inc. v. Archer & White Sales, Inc*, which requires courts to almost unquestionably enforce delegation provisions.[89]  In making this argument, however, Airbnb conflates arbitrability (which its terms of service delegate to an arbitrator) with FAA coverage (which is a question for the court).  Because this controversy is not governed by the FAA, this court also lacks the power to enforce the delegation clause in Airbnb's terms of service.[90]

**1.    Supreme Court precedent does not require the court to delegate to an arbitrator disputes that fall outside the coverage of the FAA.**

The instant case highlights the tension between the United States Supreme Court's 2019 decision in *Henry Schein* and Section 2's "arising out of" language, which deprives federal courts of the power to compel to arbitration disputes that lack a nexus to the contract that contains such a provision.  The High Court made clear in *Henry Schein* that the FAA does not authorize courts to disregard delegation clauses even if the argument for arbitration is wholly groundless.[91]  In that case, a dental-equipment distributor and a dental-equipment manufacturer entered into a contract that required arbitration of any claim arising out of or relating to that

---

[88] ECF No. 9 at 8–10.

[89] ECF No. 36 at 4 (citing *Henry Schein*, 586 U.S. 63).

[90] *In re Van Dusen*, 654 F.3d at 844; *New Prime*, 586 U.S. at 110 (noting that the authority to compel arbitration "doesn't extend to all private contracts, no matter how emphatically [the contract] may express a preference for arbitration").

[91] *Henry Schein*, 586 U.S. at 71.

contract but exempted injunctive-relief claims.[92]  It also contained a delegation clause that

authorized the arbitrator to make any threshold determinations on arbitrability.[93]  The

relationship eventually fell apart and the distributor sued for injunctive relief under the antitrust

laws.[94]  When the manufacturer moved to compel arbitration on the threshold question of

arbitrability, both the district court and the Fifth Circuit denied the motion, finding it "wholly

groundless" because the plain language of the agreement excluded injunctive-relief claims from

arbitration.[95]

But the Supreme Court unanimously disagreed.  As it explained, the FAA "contains no

'wholly groundless' exception,"[96] which federal courts had previously used to disregard

delegation clauses when the argument for arbitration was meritless.[97]  In the High Court's view,

federal courts "may not engraft [their] own exceptions onto the statutory text."[98]  Because "[t]he

exception is inconsistent with the statutory text," "[w]hen the parties' contract delegates the

arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in

the contract"[99] and, "[i]n those circumstances, a court possesses no power to decide the

arbitrability issue."[100]

---

[92] *Id.* at 66.

[93] *Id.*

[94] *Id.*

[95] *Id.* at 66–67.

[96] *Id.* at 70.

[97] *Id.* at 65 ("[E]ven when a contract delegates the arbitrability question to an arbitrator, some federal courts nonetheless will short-circuit the process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'").

[98] *Id.* at 70.

[99] *Id.* at 71.

[100] *Id.* at 68.

A few days after *Henry Schein*, however, the United States Supreme Court announced in *New Prime Inc. v. Oliveira* that the question of whether a dispute or contract falls within the coverage of the FAA cannot be delegated to an arbitrator.[101]  In *New Prime*, an interstate trucking company's drivers brought a class action against the company for misclassifying them as independent contractors.[102]  The company moved to compel arbitration, arguing that an independent contractor does not fall within Section 1 of the FAA's exemption for transportation employees[103] and that the delegation clause in their contract meant that an arbitrator needed to determine whether their claims were covered by the FAA.[104]

The Supreme Court rejected that argument.  It noted that Sections 1 and 2 of the FAA "limit the scope of the court's powers under [Sections] 3 and 4" to compel arbitration.[105]  So even if "[t]he parties' private agreement [is] crystal clear and require[s] arbitration of every question under the sun . . . that does not necessarily mean the Act authorizes a court to" compel a case to arbitration if it falls outside Section 1 and Section 2.[106]  And a delegation clause is just another "type of arbitration agreement,"[107] so the court, and not an arbitrator, must determine whether that agreement falls within the FAA's coverage.[108]  Thus, "a court may use [Sections] 3

---

[101] *New Prime*, 586 U.S. at 112 ("So a court may use §§ 3 and 4 to enforce a delegation clause only if the clause appears in a "written provision in . . . a contract evidencing a transaction involving commerce" consistent with § 2. . . . In exactly the same way, the Act's severability principle applies only if the parties' arbitration agreement appears in a contract that falls within the field §§ 1 and 2 describe.").

[102] *Id.* at 108–09.

[103] *Id.* at 109.

[104] *Id.*

[105] *Id.* at 110.

[106] *Id.* at 111.

[107] *Id.* at 112.

[108] *Id.*

1  and 4 to enforce a delegation clause only if the clause appears in a written provision in . . . a

2  contract" that falls within Section 1 and 2.[109]

3
4    ### 2.    *The FAA does not require the court to enforce a delegation provision in a contract unrelated to the dispute.*

5        Using logic similar to that in *New Prime*, numerous courts and scholars have concluded

6  that *Henry Schein* does not—and cannot—require delegating to an arbitrator the determination of

7  whether a controversy is causally related to the arbitration-clause-containing contract.[110]  Like

8  the statutory exemptions of Section 1 at issue in *New Prime*, Section 2 qualifies that the

9  controversy must "aris[e] out of" that contract for the FAA to empower an arbitration

10  provision.[111]  For this reason, several courts have refused to enforce delegation clauses when the

11  controversy "lacks what [*Henry*] *Schein* presupposes,"[112] that the controversy arises out of the

12  contract and has some sort of nexus or causal relationship to it.[113]  Yet other courts interpret

13
_____

14  [109] *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967))
      (cleaned up) ("We acknowledged as much some time ago, explaining that, before invoking the
15    severability principle, a court should "determine[ ] that the contract in question is within the
      coverage of the Arbitration Act.").

16  [110] *See Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467, 475–76 (Cal. Ct. App.
      2020); *see also Perez*, 74 F.4th at 1011 (citing *Moritz*, 268 Cal. Rptr. 3d at 475–76); David
17    Horton, *Accidental Arbitration*, 102 Wash. U.L. Rev. 1381, 1430 (2025) ("[W]hen a defendant
      seeks to enforce a delegation clause and the plaintiff counters that there is no connection between
18    their allegations and the container contract, the threshold issue is not the ambit of the arbitration
      clause; rather, it is the coverage of the FAA.  Under the contractual nexus theory, the first step in
19    the analysis is to decide whether a claim "aris[es] out of" the container contract within the
      meaning of section 2.  And this means that the relevant Court decision is not *Henry Schein*.
20    Instead, it is *New Prime Inc. v. Oliveira*, which, as noted, explained that arbitrators cannot rule
      on 'whether the contract itself falls within or beyond the boundaries of ... [section] 2.'  Thus,
21    judges must decide as a preliminary matter whether the FAA applies, setting the stage for
      resolving other issues about the delegation provision.").

22  [111] 9 U.S.C. § 2; *Davitashvili*, 131 F.4th at 120; *Johnson*, 57 F.4th at 681.

23  [112] *Perez*, 74 F.4th at 1011 (quoting *Moritz*, 268 Cal. Rptr. 3d at 475–76).

    [113] *See, e.g.*, *Moritz*, 268 Cal. Rptr. 3d at 475–76; *see also Peterson*, 237 N.E.3d at 1017; *Perez*,
    74 F.4th at 1011 (citing *Moritz*, 268 Cal. Rptr. 3d at 475–76) (rejecting the argument that

1  *Henry Schein* to nonetheless require delegation in that situation.[114]  Indeed, the Nevada Supreme

2  Court's opinion in *Rice* split along these lines.

3          Airbnb relies heavily on the majority opinion in *Rice*.  As mentioned *supra*, in *Rice*, two

4  guests were injured and killed on their way to an Airbnb rental.[115]  Airbnb moved to compel

5  arbitration because those guests happened to have their own Airbnb accounts and the accounts'

6  terms of service contained an arbitration agreement and a delegation clause.[116]  A majority of the

7  Nevada Supreme Court enforced the delegation clause despite finding that the controversy was

8  causally unrelated to the plaintiffs' accounts.[117]  It reasoned that *Henry Schein* "held that, when a

9  contract delegates the arbitrability question to the arbitrator, a court has no authority to decide

10  whether the arbitration agreement applies to the dispute, even where the argument for arbitration

11  is wholly groundless."[118]

12          In dissent, Justice Stiglich wrote that the majority's opinion in *Rice* "both misreads *Henry*

13  *Schein* and will lead to absurd consequences in the future."[119]  So she instead would "have

14  elected to follow the path tread by" the California Court of Appeal in *Moritz v. Universal City*

15  *Studios LLC*, which directly addressed the tension between *Henry Schein* and Section 2's arising-

16  out-of language.[120]  As the *Moritz* court observed, while *Henry Schein* held that a court

17

---

18  delegation clause controlled because "this case lacks what '[*Henry*] Schein presupposes'—'a

19  controversy thereafter arising out of a contract to arbitrate'" (cleaned up)).

   [114] *See, e.g.*, *Rice*, 518 P.3d at 92.

20  [115] *Id.* at 89–90.

21  [116] *Id.*

   [117] *Id.* at 92.

22  [118] *Id.*

23  [119] *Id.* at 93 (Stiglich, J., dissenting).

   [120] *Id.* (Stiglich, J., dissenting).

"possesses no power to decide the arbitrability issue" if the parties delegated arbitrability,[121] "[*Henry*] *Schein* expressly understood that the [FAA] requires enforcement of arbitration clauses with respect to disputes 'thereafter arising out of such contract.'"[122]  But, as Justice Stiglich opined, "a perpetual obligation to arbitrate any conceivable claim" is "plainly inconsistent with the FAA's explicit relatedness requirement."[123]  So *Henry Schein* and "[t]he FAA require[] no enforcement of an arbitration provision" or any delegation clause "with respect to disputes unrelated to the contract in which the provision appears," she concluded.[124]

I find that Justice Stiglich's dissent and the *Moritz* opinion offer the right approach to delegation clauses in contracts that are unrelated to the dispute before the court.  *New Prime* held that FAA coverage is a question for the court,[125] and whether a dispute "arises out of" a contract is an issue of FAA coverage.[126]  The *Rice* majority and similar cases too loosely treat this inquiry as one of arbitrability.  FAA coverage is a "distinct inquiry" from arbitrability, and refusing to enforce a delegation clause based on a finding that the agreement is not covered by the FAA is not an arbitrability determination.[127]  As the Ninth Circuit said in *In re Van Dusen*, "private

---

[121] *Schein*, 586 U.S. at 68.

[122] *Rice*, 518 P.3d at 93 (Stiglich, J., dissenting) (quoting *Moritz*, 268 Cal. Rptr. at 475).

[123] *Id.* (Stiglich, J., dissenting) (quoting *Moritz*, 268 Cal. Rptr. at 475).

[124] *Id.* (Stiglich, J., dissenting) (quoting *Moritz*, 268 Cal. Rptr. at 475–76); *see also Perez*, 74 F.4th at 1011 (citing *Moritz* with approval).

[125] *New Prime*, 586 U.S. at 111–12.

[126] *See* 9 U.S.C. § 2.

[127] *In re Van Dusen*, 654 F.3d at 844 ("[W]hatever the contracting parties may or may not have agreed upon is a distinct inquiry from whether the FAA confers authority on the district court to compel arbitration.  [The Supreme Court] has never indicated that parties may delegate this determination to an arbitrator in the first instance; on the contrary, it has affirmed that, when confronted with an arbitration clause, the district court must first consider whether the agreement at issue is of the kind covered by the FAA."); *Oliveira*, 857 F.3d at 14 ("[T]he court's authority to act under the FAA is an 'antecedent determination'" from compelling arbitration.); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("If a party challenges the validity under § 2 of

1  contracting parties cannot, through the insertion of a delegation clause, confer authority upon a

2  district court that Congress chose to withhold."[128]

3       *Moritz* and the *Rice* dissent are consistent with Section 2 and binding precedent.  In

4  *Henry Schein*, there was no doubt that there was a causal connection between the controversy

5  and the clause-containing contract—the argument for arbitrability was just purportedly

6  frivolous.[129]  But *Henry Schein* did not address whether a delegation clause could delegate the

7  question of whether a dispute arises out of the contract under Section 2.  Interpreting *Henry*

8  *Schein* as to require delegation without exception would run afoul of the Supreme Court's

9  admonition in *New Prime* that "before invoking the severability principle" and enforcing a

10  delegation clause, the "court should "determine[ ] that the contract in question is within the

11  coverage of the [FAA]."[130]  This approach is also congruent with the Ninth Circuit's observation

12  in *Perez* that delegation clauses in cases involving unrelated disputes "lack what [*Henry*] *Schein*

13  presupposes—a controversy thereafter arising out of a contract to arbitrate."[131]

14       So I find that Airbnb's delegation clause is not enforceable here.  Because Tao's

15  agreement with Airbnb is unrelated to this dispute, it is not covered by the FAA.  So this court is

16  not empowered by the FAA to enforce either the arbitration provision or the delegation clause.

17

18

19

20

---

the precise agreement to arbitrate at issue, the federal court must consider the challenge before
ordering compliance with that agreement under § 4.").

[128] *In re Van Dusen*, 654 F.3d at 844.

[129] *See Henry Schein*, 586 U.S. at 65–67.

[130] *New Prime*, 586 U.S. at 112.

[131] *Perez*, 74 F.4th at 1011 (cleaned up).

**Conclusion**

IT IS THEREFORE ORDERED that Airbnb's motion to compel arbitration **[ECF No. 9]** **is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
December 12, 2025